# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| EDITH CHAVEZ GUTIERREZ, | Case No. 1:23-cv-01130-SAB |
|---|---|
| Plaintiff, | ORDER DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL, DIRECTING CLERK OF THE COURT TO ENTER JUDGMENT IN FAVOR OF DEFENDANT AND TO CLOSE THIS ACTION |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | (ECF Nos. 10, 12, 13) |

## I.

## INTRODUCTION

Edith Chavez Gutierrez ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability benefits pursuant to the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff requests the decision of Commissioner be vacated and benefits be awarded, arguing the ALJ erred by failing to consider the unadjudicated period; failing to properly determine res judicata under Chavez; failing to address the combination of impairments in the residual functional capacity

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge and this action has been assigned to Magistrate Judge Stanley A. Boone for all purposes. (See ECF Nos. 6, 7, 8.)

1

assessment; and failing to provide clear and convincing reasons to disregard Plaintiff's symptom testimony.

For the reasons explained herein, Plaintiff's Social Security appeal shall be denied.

## II.

## BACKGROUND

### A. Procedural History

Plaintiff previously filed a Title II and Title XVI applications on March 16, 2015. The Administrative Law Judge ("ALJ") issued a decision on July 25, 2017, finding Plaintiff was not disabled from July 1, 2014, through the date of the decision. The Appeals Council denied Plaintiff's request for review on August 29, 2018. (AR 80-82.)

Plaintiff protectively filed an application for a period of disability and disability insurance benefits on November 26, 2018. (AR 95.) Plaintiff's application was initially denied on March 8, 2019, and denied upon reconsideration on May 24, 2019. (AR 106-09, 113-17.) Plaintiff requested and received a hearing before Administrative Law Judge Matilda Surh ("the ALJ"). Plaintiff appeared for a telephonic hearing on April 13, 2022. (AR 38-60.) On June 1, 2022, the ALJ issued a decision finding that Plaintiff was not disabled. (AR 12-74.) On June 5, 2023, the Appeals Council denied Plaintiff's request for review. (AR 1-3.)

### B. The ALJ's Findings of Fact and Conclusions of Law

The ALJ made the following findings of fact and conclusions of law as of the date of the decision, June 1, 2023:

- Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2018.

- Plaintiff did not engage in substantial gainful activity during the period from the alleged onset date of June 13, 2013, through her date last insured of December 31, 2018.

- Through the date last insured, Plaintiff had the following severe impairments: fibromyalgia, mild degenerative disc disease of the lumbar spine, major depressive disorder, and anxiety.

- Through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

- After careful consideration of the entire record, the ALJ found, through the date last insured, Plaintiff had the residual functional capacity to perform light work as defined in 20 CFR § 404.1567(b) except standing and walking for up to six hours in an eight-hour day and sitting for up to six hours in an eight-hour day, with normal breaks, except Plaintiff is limited to frequent climbing of ladders, ropes, or scaffolds; frequent climbing of ramps or stairs; frequent balancing, stooping, crouching, kneeling, and crawling; frequent overhead reaching with right upper extremity; frequent handling, fingering, and feeling with right upper extremity; avoid concentrated use of hazardous machinery and unprotected heights; capable of simple work as defined by the Dictionary of Occupational Titles ("DOT") as Specific Vocational Preparation ("SVP") 1 and 2, routine or repetitive tasks.
- Through the date last insured, Plaintiff was unable to perform any past relevant work.
- Plaintiff was 42 years old, which is defined as a younger individual age 18-49, on the date last insured,
- Plaintiff has at least a high school education.
- Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Plaintiff is "not disabled," whether or not she has transferable job skills.
- Through the date last insured, considering Plaintiff's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed.
- Plaintiff was not under a disability, as defined in the Social Security Act, at any time from June 13, 2013, the alleged onset date, through December 31, 2018, the date last insured.

(AR 19-31.)

## III.

## LEGAL STANDARD

### A. The Disability Standard

To qualify for disability insurance benefits under the Social Security Act, a claimant must show she is unable "to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment[2] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five-step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520;[3] Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006). The burden of proof is on the claimant at steps one through four. Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020). A claimant establishes a *prima facie* case of qualifying disability once she has carried the burden of proof from step one through step four.

Before making the step four determination, the ALJ first must determine the claimant's RFC. 20 C.F.R. § 416.920(e); Nowden v. Berryhill, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018). The RFC is "the most [one] can still do despite [her] limitations"

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).

[3] The regulations which apply to disability insurance benefits, 20 C.F.R. §§ 404.1501 et seq., and the regulations which apply to SSI benefits, 20 C.F.R. §§ 416.901 et seq., are generally the same for both types of benefits. Accordingly, while Plaintiff seeks only Social Security benefits under Title II in this case, to the extent cases cited herein may reference one or both sets of regulations, the Court notes these cases and regulations are applicable to the instant matter.

and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1). The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e); 416.945(a)(2); Social Security Ruling ("SSR") 96-8p, available at 1996 WL 374184 (Jul. 2, 1996).[4] A determination of RFC is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner. See 20 C.F.R. §§ 404.1527(d)(2) (RFC is not a medical opinion); 404.1546(c) (identifying the ALJ as responsible for determining RFC). "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001).

At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform given her RFC, age, education, and work experience. 20 C.F.R. § 416.912(g); Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006). To do this, the ALJ can use either the Medical Vocational Guidelines ("grids"), or rely upon the testimony of a VE. See 20 C.F.R. § 404 Subpt. P, App. 2; Lounsburry, 468 F.3d at 1114; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). "Throughout the five-step evaluation, the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.' " Ford, 950 F.3d at 1149 (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)).

**B.    Standard of Review**

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In determining whether to reverse an ALJ's decision, the Court reviews only those issues raised by the party challenging the decision. See Lewis v. Apfel, 236 F.3d 503, 517 n.13 (9th Cir. 2001). Further, the Court's review of the Commissioner's decision is a limited one; the Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); Biestek v. Berryhill, 139 S. Ct. 1148, 1153 (2019). "Substantial evidence is relevant

---

[4] SSRs are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner. 20 C.F.R. § 402.35(b)(1). While SSRs do not have the force of law, the Court gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989); see also Avenetti v. Barnhart, 456 F.3d 1122, 1124 (9th Cir. 2006).

evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart (Thomas), 278 F.3d 947, 954 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)); see also Dickinson v. Zurko, 527 U.S. 150, 153 (1999) (comparing the substantial-evidence standard to the deferential clearly erroneous standard). "[T]he threshold for such evidentiary sufficiency is not high." Biestek, 139 S. Ct. at 1154. Rather, "[s]ubstantial evidence means more than a scintilla, but less than a preponderance; it is an extremely deferential standard." Thomas v. CalPortland Co. (CalPortland), 993 F.3d 1204, 1208 (9th Cir. 2021) (internal quotations and citations omitted); see also Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996). Even if the ALJ has erred, the Court may not reverse the ALJ's decision where the error is harmless. Stout, 454 F.3d at 1055–56. Moreover, the burden of showing that an error is not harmless "normally falls upon the party attacking the agency's determination." Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

Finally, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). Nor may the Court affirm the ALJ on a ground upon which he did not rely; rather, the Court may review only the reasons stated by the ALJ in his decision. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003). Nonetheless, it is not this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment for the ALJ's; rather, if the evidence "is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." Ford, 950 F.3d at 1154 (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)).

**IV.**

**DISCUSSION AND ANALYSIS**

Plaintiff raises three issues in this appeal: 1) the ALJ's res judicata analysis is not supported by the record; 2) the ALJ erred by not reviewing the medical records from 2019-2022 and including Plaintiff's combination of impairments in the RFC; and 3) the ALJ did not provide clear and convincing reasons to reject Plaintiff's symptom testimony.

### A. Whether the res judicata findings are supported by the record

Plaintiff argues that rather than considering the entire record, the ALJ reviewed the same records that were considered in the prior application. Plaintiff argues that the ALJ wrongly considered that Plaintiff was only applying for disability benefits under Title II and limited her findings to the date last insured.[5] (Pl.'s Motion for Summary Judgment ("Mot.") 14,[6] ECF No. 10.) Plaintiff contends that the ALJ only considered records through 2018, and the error was not harmless as Dr. Robinson noted that Plaintiff might have some inflammatory arthritis and her condition is likely rheumatoid arthritis or a spondyloarthropathy in 2019. (Mot. at 14-15.) In 2020, Dr. Swe diagnosed Plaintiff with ankylosing spondylitis and fibromyalgia which Plaintiff asserts supports changed circumstances as her condition became worse. Plaintiff argues that since the ALJ did not review evidence after 2018, the res judicata issue was not resolved and the findings are not supported by substantial evidence in the record. (Mot. at 15.)

Defendant responds that the ALJ properly considered the evidence, applied AR 97-4(9) and explained that Plaintiff had not rebutted the presumption of continuing non-disability. Further, Defendant contends that the ALJ explained that the period at issue was brief and not far removed from the prior decision, as the date last insured was December 31, 2018, and the prior decision was issued on July 25, 2017. Defendant argues that the ALJ's findings were entirely proper under the agency guidance and authority. (Opp. at 5.) Defendant asserts that Plaintiff never sought to reopen the prior application for Title XVI benefits, nor could she as the regulations allow reopening a Title XVI claim within 12 months of date of the initial determination for any reason, and within two years of the initial determination if good cause is found or for fraud or similar fault or other rare circumstances. (Opp. 5.)

Defendant also argues that the "changed circumstances" must come form the unadjudicated period, and not from a later period when the claimant was not insured for disability benefits. (Opp. 5-6.) Defendant contends that Plaintiffs' argument for changed circumstances fails as those

---

[5] Plaintiff mistakenly states that the date last insured was December 31, 2019, however, the ALJ found that the date last insured was December 31, 2018. (AR 19.)

[6] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

7

circumstances occurred after the unadjudicated time period and the medical records from Dr. Robinson and Swe were not retrospective opinions that the ALJ had to consider during the relevant time period. (Opp. at 6.)

Plaintiff replies that the Ninth Circuit has specifically held that medical evaluations after the expiration of a claimant's insured status are relevant to the evaluation of a preexisting condition. Plaintiff argues that since the ALJ did not review the entire record, the error cannot be considered harmless. (Reply at 3.)

1. <u>Res Judicata Legal Standard</u>

"The principles of res judicata apply to administrative decisions, although the doctrine is applied less rigidly to administrative proceedings than to judicial proceedings." <u>Chavez v. Bowen</u>, 844 F.2d 691, 693 (9th Cir. 1988). To overcome the presumption of continuing non-disability that arises from the prior administrative law judge's findings of non-disability, the claimant must prove "changed circumstances" affecting the issue of disability during the unadjudicated period, such as an increased severity of an impairment or an alleged impairment not previously considered. <u>Chavez</u>, 844 F.2d at 693; <u>Taylor v. Heckler</u>, 765 F.2d 872, 875 (9th Cir. 1985); <u>Gregory v. Bowen</u>, 844 F.2d 664, 666 (9th Cir. 1988).

2. <u>Analysis</u>

The ALJ considered that Plaintiff had a prior adjudication to which res judicata applied and the presumption of continuing non-disability after July 25, 2017, applied unless Plaintiff showed " 'changed circumstance indicating a greater disability' with respect to the unadjudicated period. Examples of a 'changed circumstance' are an increase in the severity of the claimant's impairments, the alleged existence of an impairment not previously considered, or a change in the criteria for determining disability (such as a change in age category)." (AR 16.) The ALJ also noted "[t]he current period at issue was brief and not far removed from the previous decision, as the current case is a Title II only with a date last insured of December 31, 2018, and the prior decision was issued on July 25, 2017. (AR 16, 23.)

Although Plaintiff contends that the ALJ did not consider the medical record after 2018, the ALJ did consider that Plaintiff alleged that she suffers from inflammatory arthritis/ankylosing

1  spondylitis, which was not diagnosed until after her date last insured in this Title II only case, and
2  the medical evidence of record did not support the existence of this impairment prior to the date
3  last insured.  The ALJ found this impairment is not a medically determinable impairment.  The ALJ
4  also considered that on February 7, 2019, after her date last insured, Plaintiff was diagnosed with
5  inflammatory arthritis and Dr. Schorr submitted several opinions that indicated this condition began
6  in March of 2019.  (AR 20.)

7  Plaintiff argues that Dr. Schorr treated her from 2012 onward and his 2021 evaluation is
8  relevant to new conditions, limitations, and changes in her functioning.   Plaintiff also contends that
9  the records are retrospective and give a full account of Plaintiff's condition over time.  (Mot. 17.)

10  The ALJ considered that Plaintiff was seen for a new patient visit on February 7, 2019, by
11  Dr. Robinson for possible rheumatoid arthritis.  Examination notes mild diffuse tenderness of the
12  abdomen; pain with cervical spine range of motion; pain with shoulder and elbow range of motion;
13  wrists with perhaps a trace inflammation and significant tenderness with palpation and range of
14  motion; MCPs and PIPs with trace to 1+ inflammation, tenderness with palpation; hips painful with
15  range of motion; knees with no evidence of effusion or synovitis by tender with palpation; ankle
16  and feet tenderness with palpation with perhaps a trace inflammation at the ankles.  Examination
17  notes diffuse tenderness with palpation in numerous nonarticular areas including throughout the
18  spine, buttock area, and at the extremities; ribs and anterior chest wall are also tender with palpation.
19  Dr. Robinson notes that he thought Plaintiff does have some inflammatory arthritis but there is also
20  a very substantial degree of amplification due to her history of fibromyalgia.  He thought her
21  condition was likely rheumatoid arthritis or a spondyloarthropathy.  (AR 390.)

22  The ALJ considered Plaintiff's diagnosis of inflammatory arthritis/ankylosing spondylitis.
23  On April 30, 2020, Plaintiff was seen by Dr. Swe complaining of aching pain in her lower back,
24  upper back, and elbows with no radiation.  The pain is aggravated by inactivity and relieved by pain
25  medication.  (AR 557.)  Examination notes tenderness at the upper back, lower back, hands, and
26  knees. There is mild swelling in the MCPs of both hands and the knees.  Range of motion is slightly
27  limited at the hands.   (AR 563.)   Plaintiff was diagnosed with Ankylosing spondylitis of
28  lumbosacral region, fibromyalgia, malaise and fatigue, positive QuantiFERON-TB test, and long-

term drug therapy.  (AR 566.)

The ALJ also considered that Dr. Schorr issued several opinions regarding Plaintiff's limitations.

On December 29, 2021, Dr. Schorr completed a fibromyalgia residual functional capacity questionnaire.  (AR 663-66.)  Dr. Schorr stated that he had been Plaintiff's primary care physician for 4+ years.  She meets the American College of Rheumatology criteria for fibromyalgia.  She is also diagnosed with inflammatory arthritis.  Plaintiff's symptoms include chronic fatigue syndrome, multiple tender points, chronic fatigue, subjective swelling, feeling anxious or depressed, tension or migraine headaches, muscle weakness, anxiety, and muscle weakness.  Dr. Schorr stated that the date that Plaintiff's current diagnosis caused any functional limitations was approximately January 2, 2021.  (AR 666.)

On April 6, 2022, Dr. Schorr completed an arthritis residual functional capacity questionnaire.  (AR 670-72.)  Dr. Schorr stated that he had treated Plaintiff for three plus years.  Her diagnoses were inflammatory arthritis and fibromyalgia.  Her symptoms included multi joint pain including in her hands and feet.  Plaintiff has generalized chronic pain including joints, legs, hands, feet, and an undecipherable area.  Dr. Schorr stated that in his opinion the approximate date that the current diagnosis caused any functional limitations was March 19, 2019.  (AR 672.)

On April 6, 2022, Dr. Schorr completed a form entitled "Medical Opinion RE: Ability To Do Work-Related Activities."  (AR 667-69.)  Dr. Schorr stated that Plaintiff's diagnosis was inflammatory arthritis and an undecipherable diagnosis.  Her symptoms included multi joint pain and swelling in the knees and hands.   She had chronic pain in multiple joints.  Dr. Schorr stated that the date that the current diagnosed caused any functional limitations was March 13, 2019.  (AR 669.)

"[M]edical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the preexpiration condition."  Lester v. Chater, 81 F.3d 821, 832 (9th Cir.1995) (quoting Smith v. Bowen, 849 F.2d 1222, 1225 (9th Cir.1988).  Retrospective diagnoses by treating physicians and medical experts are relevant to the determination of a continuously existing disability with onset prior to expiration of insured status.  Flaten, 44 F.3d at 1461 fn.5.  "In a

retrospective diagnosis case, a '[c]laimant is not entitled to disability benefits unless he can demonstrate that his disability existed prior to the expiration of his insured status.' " Id., fn.4 (quoting Cruz Rivera v. Secretary of Health & Human Servs., 818 F.2d 96, 97 (1st Cir.1986)).

Here, the ALJ considered Dr. Robinson's medical record in 2019 which indicated that Plaintiff may have some inflammatory arthritis and that he thought her condition was likely rheumatoid arthritis or a spondyloarthropathy, but reasonably could find that it was not a retrospective diagnosis based on Dr. Schorr's opinions that none of Plaintiff's conditions caused any functional limitations prior to March 13, 2019. (AR 20, 666, 669, 672.) Since the evidence "is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." Ford, 950 F.3d at 1154.

In order to obtain disability benefits, a claimant must demonstrate that she was disabled prior to her last insured date. Armstrong v. Comm'r of Soc. Sec. Admin., 160 F.3d 587, 589 (9th Cir. 1998). The claimant bears the burden of showing either permanently disability or a condition which became so severe that it was disabling prior to the date upon which her disability insured status expires. Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995); Armstrong, 160 F.3d at 589. Any deterioration of the claimant's condition after the date last insured is immaterial. Johnson, 60 F.3d at 1434; Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989).

Here, while Plaintiff argues that the records after 2019 are relevant to new conditions, limitations and changes in functioning, Plaintiff has not demonstrated that the ALJ erred by determining that Plaintiff's condition deteriorated in March 2019 after the date she was last insured. Therefore, the ALJ did not err by failing to consider the medical evidence after December 31, 2018.

The Court finds that substantial evidence supports the ALJ's finding that Plaintiff did not rebut the presumption of continuing non-disability. (AR 16.)

**B. Title XIV**

Plaintiff argues that the date of insured cannot be used to stop the analysis of disability because Plaintiff is seeking benefits for both Title II and Title XIV as she sought to reopen the prior findings. Plaintiff contends that evidence after the date last insured is relevant to both the Title II and Title XVI cases. (Mot. at 13.)

Defendant responds that Plaintiff's main argument is that the ALJ mistakenly believed that Plaintiff had only applied for benefits under Title II and therefore wrongly limited her finding to the date last insured. However, Plaintiff does not cite to anywhere in the record that Plaintiff sought to reopen the prior finding. Defendant argues that the ALJ correctly determined that Plaintiff was seeking benefits under Title II only because Plaintiff's application was for Title II benefits only.

Plaintiff replies that the Commissioner is incorrect that Plaintiff was required to reopen the prior application to have her Title XVI application reconsidered. Plaintiff contends that the new medical evidence is retrospective and relates directly to her condition and since the ALJ did not consider the entire record the decision is not supported by substantial evidence.

There is no contention that the prior decision issued on July 25, 2017, was not a final decision. Rather, the parties dispute whether the current application applies only to benefits under Title II or whether both Title II and XVI benefits are at issue.

Plaintiff's application only sought SSDI benefits under Title II and specifically states she does not want to file for SSI. (AR 236.) Plaintiff does not point to anywhere in the record where a request was made to reopen the prior denial of SSI benefits, nor does she present any authority to support her argument that filing for SSDI benefits would automatically reopen the prior denial of SSI benefits. Plaintiff has not demonstrated that the ALJ erred by only considering the application for SSDI benefits in the current application.

Since Plaintiff did not rebut the presumption of continuing non-disability as found above, the ALJ did not err by failing to consider any deterioration of her condition or new diagnoses after the date last insured as they were immaterial. Johnson, 60 F.3d at 1434; Weetman, 877 F.2d at 22.

Plaintiff argues that the ALJ erred by failing to discuss the combination of ankylosing spondylitis in combination with her fibromyalgia and depression. (Mot. at 17.) Defendant counters that since the diagnosis of inflammatory arthritis and ankylosing spondylitis began after the date last insured, and Dr. Schorr specifically limited the period to which the medical statements applied, the ALJ was not required to consider it in formulating Plaintiff's functional capacity assessment. (Opp. at 7.) Plaintiff replies that the ALJ was required to consider the medical opinions after the expiration of the date last insured. (Reply at 3.)

In the context of challenges to an ALJ's alleged failure to address evidence, the Ninth Circuit has repeatedly held that an ALJ "need not discuss all evidence presented to her. Rather, she must explain why significant probative evidence has been rejected." Kilpatrick v. Kijakazi, 35 F.4th 1187, 1193 (9th Cir. 2022) (quoting Vincent ex rel. Vincent v. Heckler, 739 F.2d 1393, 1394–95 (9th Cir. 1984)). Since the medical evidence after December 31, 2018, was found to be not retrospective and was therefore immaterial, Johnson, 60 F.3d at 1434; Weetman, 877 F.2d at 22, the ALJ did not err by failing to consider the later evidence in formulating Plaintiff's residual functional capacity assessment because it was not probative as to the Title II claim for benefits.

### C.     Plaintiff's Symptom Testimony

Plaintiff argues that the ALJ erred by using only a limited section of the evidence in determining credibility and did not provide clear and convincing reasons to support the findings. Plaintiff contends that the records support Plaintiff's findings and the ALJ did not provide clear and convincing reasons to reject her symptom testimony. (Mot. at 18.)

Defendant counters that the ALJ found that Plaintiff's subjective complaints were not fully supported by the objective medical evidence, the conservative nature of the treatment, and her daily activities. Defendant argues that these are clear and convincing reasons to reject Plaintiff's subjective symptom complaints. (Opp. at 7.) Defendant states that Plaintiff has not specifically challenged any of the ALJ's credibility findings and has therefore waived any challenge to the ALJ's supporting reasons and conceded the accuracy of the findings. Defendant contends that Plaintiff argues that the ALJ failed to address the entire record and therefore there is a conflict in his findings, citing Plaintiff's statements during a 2015 consultative examination without providing any argument regarding these statements. The July 25, 2017 decision is a final decision and the ALJ property applied res judicata to the prior findings. (Opp. at 8.)

Plaintiff replies that the ALJ is required to address her credibility according to the standards under 20 C.F.R. § 404.1529. (Reply at 4.) Plaintiff states that the ALJ cannot reject symptom testimony without offering clear and convincing reasons for doing so and the credit as true doctrine applies. Plaintiff seeks remand for benefits. (Reply at 5.)

///

1. Legal Standard

A claimant's statements of pain or other symptoms are not conclusive evidence of a physical or mental impairment or disability. 42 U.S.C. § 423(d)(5)(A); SSR 16-3p; see also Orn, 495 F.3d at 635 ("An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment."). Rather, an ALJ performs a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. See Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014); Smolen, 80 F.3d at 1281; SSR 16-3p, at *3. First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. Garrison, 759 F.3d at 1014; Smolen, 80 F.3d at 1281–82. If the claimant satisfies the first step and there is no evidence of malingering, "the ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear, and convincing reasons for doing so." Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020) (citations omitted).

If an ALJ finds that a claimant's testimony relating to the intensity of her pain and other limitations is unreliable, the ALJ must make a credibility determination citing the reasons why the testimony is unpersuasive. The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints. In this regard, questions of credibility and resolutions of conflicts in the testimony are functions solely of the Secretary. Valentine v. Astrue, 574 F.3d 685, 693 (9th Cir. 2009) (quotation omitted); see also Lambert, 980 F.3d at 1277.

In addition to the medical evidence, factors an ALJ may consider include the location, duration, and frequency of the pain or symptoms; factors that cause or aggravate the symptoms; the type, dosage, effectiveness or side effects of any medication; other measures or treatment used for relief; conflicts between the claimant's testimony and the claimant's conduct—such as daily activities, work record, or an unexplained failure to pursue or follow treatment—as well as ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, internal contradictions in the claimant's statements and testimony, and other testimony by the claimant that appears less than candid. See Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014); Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008); Lingenfelter v. Astrue, 504 F.3d

1028, 1040 (9th Cir. 2007); Smolen, 80 F.3d at 1284. Thus, the ALJ must examine the record as a whole, including objective medical evidence; the claimant's representations of the intensity, persistence and limiting effects of her symptoms; statements and other information from medical providers and other third parties; and any other relevant evidence included in the individual's administrative record. SSR 16-3p, at *5.

2. Analysis

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, her statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision. (AR 25.)

> Turning to the medical evidence, the objective findings in this case fail to provide strong support for the claimant's allegations of disabling symptoms and limitations. More specifically, the medical findings do not support the existence of limitations greater than the above listed residual functional capacity. I note that it is the claimant's responsibility to put forth evidence showing she had an impairment and how severe it is during the period she alleges disability (20 CFR 404.1512). Although the subjective element of incapacity is an important consideration in determining disability, I have discretion to evaluate the claimant's statements and to arrive at an independent judgment, in light of medical findings and evidence regarding the true extent of the incapacity alleged by the claimant. The issue of the value of the claimant's statements in this case cannot be discussed analytically in absolute terms but must be measured by degree. The claimant testified, and may honestly believe that her impairments are disabling. However, it is my duty to accurately apply the rules and regulations to determine the degree of her impairments based upon the totality of all of the other evidence of record. I have evaluated the claimant's subjective complaints and other allegations in accordance with 20 CFR 404.1529 and SSR 16-3p. The claimant's statements about the intensity, persistence, and limiting effects of symptoms are not entirely consistent with the objective medical evidence and the other evidence of record. It should be noted there was a limited amount of objective medical evidence in file that dealt with the period after the claimant's last unfavorable Administrative Law Judge decision.

(AR 25.)

The ALJ noted that from October of 2014 continuing through September of 2015, the medical records noted consistent complaints of generalized muscle pain, fatigue, and intermittent reports of anxiety and depression. (AR 25.) The ALJ considered the examination notes and treatment received and stated,

> I have given the claimant the benefit of the doubt regarding the claimant's symptoms resulting from her fibromyalgia, mild degenerative disc disease of the lumbar spine, major depressive disorder, and anxiety, and the residual functional capacity

> indicated above adequately accounts for these symptoms. Overall, the claimant's treatment record was not consistent with her allegations. While the claimant did have regular treatment, at times, for fibromyalgia, anxiety, and depression, this treatment was conservative in nature consisting mainly of medication management.

(AR 26.) The ALJ went on to discuss the medical evidence and concluded:

> In sum, the above residual functional capacity assessment is supported by the objective medical evidence contained in the record. The claimant's statements about the intensity, persistence, and limiting effects of symptoms are not entirely consistent with the objective medical evidence and the other evidence of record. The claimant's case is weakened by inconsistencies between her allegations, her statements regarding daily activities, and the medical evidence. Although the inconsistent information provided by the claimant may not be the result of a conscious intention to mislead, nevertheless the inconsistencies suggest that the information provided by the claimant generally may not be entirely reliable. The claimant does experience some limitations but only to the extent described in the residual functional capacity above.

(AR 29.)

Plaintiff does not challenge the ALJ's findings that the objective medical evidence, her daily activities, and her conservative treatment are inconsistent with her statements regarding the intensity, persistence, and limiting effects of symptoms. The Court will only review "issues which are argued specifically and distinctly," and Plaintiff has waived (or forfeited) this argument. Deluca v. Berryhill, 721 F. App'x 608, 610 (9th Cir. 2017) (citing Indep. Towers of Wash. v. Washington, 350 F.3d 925, 929 (9th Cir. 2003) and Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1161 n.2 (9th Cir. 2008)); see also Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1007 (9th Cir. 2006) (plaintiff waived any challenge to the specific credibility findings by failing to raise them in her opening brief). The ALJ provided clear and convincing reasons to reject Plaintiff's symptom testimony. See Regennitter v. Commissioner of Social Sec. Admin., 166 F.3d 1294, 1297 9th Cir. 1999) (medical evidence); Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989) (daily activities); Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) (conservative treatment).

To the extent that Plaintiff argues her statements regarding her activities of daily living in 2015 to Dr. Chandler support her allegations, (AR 344), the ALJ is not required to credit a claimant's subjective complaints simply because they are recorded in her physician's records, Sager v. Colvin, 622 F. App'x 629, 629 (9th Cir. 2015) (citing Batson, 359 F.3d at 1195). Further, "the key question is not whether there is substantial evidence that could support a finding of disability,

but whether there is substantial evidence to support the Commissioner's actual finding that claimant is not disabled." Jamerson v. Chater, 112 F.3d 1064, 1067 (9th Cir. 1997).

Here, Plaintiff argues error based on the failure to consider records after the date last insured. However, to the extent that Plaintiff's symptoms or conditions worsened after the date last insured, it is irrelevant to the insured period. Johnson, 60 F.3d at 1434; Weetman, 877 F.2d at 22.

Plaintiff has failed to show that the ALJ erred in considering her symptom testimony.

## V.

## CONCLUSION AND ORDER

In conclusion, the Court denies Plaintiff's Social Security appeal and finds no harmful error warranting remand of this action.

Accordingly, IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is DENIED. It is FURTHER ORDERED that judgment be entered in favor of Defendant Commissioner of Social Security and against Plaintiff Edith Chavez Gutierrez. The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated: **July 2, 2024**

UNITED STATES MAGISTRATE JUDGE